UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| YVETTE J. ANDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:17-cv-00183-SLC |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, *sued as Nancy A.* | ) |
| *Berryhill, Acting Commissioner of SSA,* | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Yvette J. Anderson appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Anderson applied for DIB and SSI in September 2014, alleging disability as of August 31, 2014. (DE 9 Administrative Record ("AR") 327-32). The Commissioner denied Anderson's application initially and upon reconsideration. (AR 211-12, 243-44). A hearing was held on August 13, 2015, before Administrative Law Judge Daniel Balutis (the "ALJ"), at which Anderson, who was represented by counsel; Anderson's daughter; and a vocational expert, Marie

---

[1] All parties have consented to the Magistrate Judge. (DE 12); *see* 28 U.S.C. § 636(c).

Kieffer (the "VE"), testified. (AR 101-80). On February 16, 2016, the ALJ rendered an unfavorable decision to Anderson, concluding that she was not disabled because despite the limitations caused by her impairments she could perform her past relevant work as a recreation aide, as actually and generally performed, as well as a significant number of unskilled, light exertional jobs in the economy. (AR 78-95). Anderson submitted additional evidence to the Appeals Council (AR 2, 6-69), but the Appeals Council denied Anderson's request for review (AR 1-6, 74), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

Anderson filed a complaint with this Court on April 26, 2017, seeking relief from the Commissioner's final decision. (DE 1). In this appeal, Anderson argues that: (1) the Appeals Council erred in its consideration of evidence submitted with her request for review; (2) the ALJ failed to properly evaluate her symptom testimony; and (3) the ALJ failed to properly formulate her residual functional capacity ("RFC") and posed a flawed hypothetical to the VE. (DE 15 at 12-23).

At the time of the ALJ's decision, Anderson was 50 years old (AR 95, 320); had completed the 10th grade, obtained her GED, and was trained as a certified nursing assistant ("CNA") (AR 110-11, 357); and had 19 years past work experience as a CNA and six months past work experience as a recreation aide in a nursing home (AR 357). At the time of the hearing, Anderson was five feet, three inches tall, and weighed 256 pounds. (AR 109). Anderson alleges disability due to swelling in her legs and feet, shortness of breath, high blood sugar, lightheadedness, pain in her legs, diabetes, high cholesterol, thyroid problems, asthma, and back pain. (AR 356, 365, 369, 376, 380, 409).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III. ANALYSIS

### A. The Law

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12

months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, see 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] See Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520, 416.920. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. Zurawski v. Halter, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. Id. (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. Clifford, 227 F.3d at 868 (citation omitted).

## B. The Commissioner's Final Decision

On February 16, 2016, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 78-95). At step one of the five-step analysis, the ALJ found

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

4

that Anderson had not engaged in substantial gainful activity since her alleged onset date. (AR 80). At step two, the ALJ found that Anderson had the following severe impairments: diabetes mellitus with neuropathy, obesity, asthma, major depressive disorder, and panic disorder/post traumatic stress disorder. (AR 80). At step three, the ALJ concluded that Anderson did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 85-87).

Before proceeding to step four, the ALJ determined that Anderson's symptom testimony was not entirely credible (AR 88), and the ALJ assigned her the following RFC:

> [T]he claimant has the [RFC] to perform light work . . . except: occasionally climb ramps and stairs; occasionally climb ladders and scaffolds; frequently balance; frequently stoop; occasionally kneel; occasionally crouch; occasionally crawl; never be exposed to unprotected heights or moving mechanical parts; occasional humidity and wetness; frequent exposure to dust, odors, fumes, and pulmonary irritants; occasional exposure to dangerous terrain and slippery surfaces; limited to performing simple, routine tasks; and, time off task can be accommodated by normal breaks.

(AR 87). Based on the RFC and the VE's testimony, the ALJ concluded at step four that Anderson could perform her past relevant work as a recreation aide, both as she actually performed it and as it is generally performed. (AR 93). Alternatively, the ALJ concluded at step five that Anderson could perform a significant number of unskilled, light exertional jobs in the economy, including cashier, office helper, and small products assembler. (AR 94). Therefore, Anderson's applications for DIB and SSI were denied. (AR 95).

## C. Evidence Submitted to the Appeals Council

Anderson submitted evidence to the Appeals Council that was not before the ALJ when she requested a review of the ALJ's decision. (AR 2, 7-69). This evidence included an MRI of

5

her lumbar spine dated June 16, 2016 (AR 59-60), and records of Ortho Northeast from July and August 2016 (AR 66-69). Anderson argues that the Appeals Council erred by failing to properly consider this additional evidence.

"The [Social Security Administration's] regulations allow a claimant seeking review of an ALJ's decision to submit additional evidence to the Appeals Council." *Brown v. Colvin*, No. 1:14-cv-01797-JMS-MJD, 2015 WL 3886029, at *12 (S.D. Ind. June 22, 2015) (citing 20 C.F.R. § 404.970(b)). "This review occurs in three steps." *Id*. "First, the Appeals Council 'consider[s] the additional evidence' only if the evidence is 1) 'new,' 2) 'material,' and 3) 'relate[d] to the period on or before the date of the administrative law judge hearing decision.'" *Id*. (alterations in original) (quoting 20 C.F.R. § 404.970(b)). "Evidence that meets this three part test is deemed 'qualifying' evidence." *Id*. (quoting *Farrell v. Astrue*, 692 F.3d 767, 771 (7th Cir. 2012)).

"If the Council determines that the additional evidence is in fact qualifying, then the Council proceeds to step two of the evaluation." *Id*. "Here, the Council 'evaluate[s] the entire record including the new and material evidence submitted,' and asks whether the ALJ's decision is 'contrary to the weight of the evidence currently of record'—that is, the record that was before the ALJ in addition to the qualifying evidence." *Id*. (alteration in original) (quoting 20 C.F.R. § 404.970(b)). "If the ALJ's decision is **not** contrary to the weight of the evidence currently of record, then the Appeals Council prepares a denial notice and the review ceases at step two." *Id*. (citing 20 C.F.R. § 404.970(b); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997)). "If, on the other hand, the ALJ's decision **is** contrary to the weight of the evidence currently of record, then the Appeals Council proceeds to step three of its review; there, the Council undertakes a complete review of the claimant's entire record." *Id*. (citing *Perkins*, 107 F.3d at 1294).

6

Here, the Commissioner concedes that the MRI and the Ortho Northeast records were "new" in that this evidence was "not in existence or available to the claimant at the time of the administrative proceeding." (DE 16 at 4 (quoting *Schmidt*, 395 F.3d at 742)). "New evidence is 'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion had the evidence been considered." *Schmidt*, 395 F.3d at 742 (quoting *Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)). "Thus, new evidence is material only if it is relevant to the claimant's condition during the relevant time period encompassed by the disability application under review." *Id*. (citation and internal quotation marks omitted).

The Commissioner argues that the Appeals Council "properly found that the evidence was not material" in that the "information does not provide a basis for changing the ALJ's decision." (DE 16 at 4). But the Appeals Council never said that the MRI and the Ortho Northeast records did not provide a basis for changing the ALJ's decision. Rather, the Appeals stated:

> In looking at your case, we considered the reasons you disagree with the decision *in the material listed on the enclosed Order of Appeals Council.*
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(AR at 2 (emphasis added)). The material listed on the Order of Appeals Council is simply "Exhibit B20E Brief from Attorney Lindsay Davenport dated April 25, 2016." (AR 6). The brief consists of four pages of argument from Anderson's attorney, all of which pre-dates the MRI and the Ortho Northeast records. (AR 447-49).

After concluding that *the attorney's brief* did not provide a basis for changing the ALJ's decision, the Appeals Council went on to state the following about the additional evidence that

7

Anderson submitted:

> We also looked at records from Aiman Hassan, M.D., dated February 17, 2016 (2 pages) and September 2, 2016 (6 pages); St. Joseph Hospital dated April 7, 2016 to April 9, 2016 (30 pages) and April 23, 2016 (13 pages); Parkview Hospital dated June 16, 2016 (3 pages) and August 21, 2016 to August 23, 2016 (4 pages); and Ortho Northeast dated July 14, 2016 (3 pages) and August 25, 2016 (2 pages). The Administrative Law Judge decided your case through February 16, 2016. *This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 16, 2016.*

(AR at 2 (emphasis added)). Thus, it is apparent that the Appeals Council summarily found that the MRI and the Ortho Northeast records were not material solely on the basis that they were dated four months after the ALJ's decision.

Here, the MRI showed multilevel degenerative changes most pronounced at L5-S1, demonstrating moderate left and mild right facet arthropathy with a prominent left facet osteophyte resulting in moderate to severe left neuroforaminal narrowing. (AR 60). After the MRI, Micah Smith, M.D., of Ortho Northeast, noted Anderson's history of "pain with numbness, tingling and popping in the lower back which has been present for 5 years" and diagnosed her with lumbar radiculitis, lumbar chronic pain, lumbar stenosis, and low back pain, together with an adult body mass index of 40.0-44.9. (AR 66, 69). Dr. Smith prescribed medications; discussed a weight control program; referred her to physical therapy to relieve pain, to increase range of motion, and to increase strength; and referred her to another physician for a back pain consultation. (AR 67, 69).

The Commissioner argues that the MRI and the Ortho Northeast records do not relate to the period on or before the date of the ALJ's decision, contending, rather, that this evidence reflects a worsening of Anderson's back pain in the four months after the ALJ's decision. (DE

8

16 at 5-6). As such, the Commissioner argues that there is no error with the Appeals Council's conclusion that the additional evidence was not material or related to the relevant period. (DE 16 at 5-6). However, "[t]he Appeals Council's cursory, formulaic rejection of [the MRI and the Ortho Northeast records] simply because [they were] generated after the ALJ's decision, without any legal or factual reasoning, is insufficient." *Webster v. Colvin*, 215 F. Supp. 3d 237, 242 (W.D.N.Y. 2016) (citation omitted); *see Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2nd Cir. 2016) ("[M]edical evidence generated after an ALJ's decision cannot [be] deemed irrelevant solely because of timing." (citation omitted)).

During the relevant period, Anderson complained of back pain at the hearing, in her filings, and to several medical sources of record. (*See, e.g.*, AR 122 (experiences back pain after 20 minutes of standing), 125 (cannot carry 20 pounds two blocks due to back pain), 129 (back pain upon bending), 369 (low back pain affecting lifting, bending, standing, walking, kneeling, and climbing), 376 (back pain), 380 (back pain makes it hard to function); 409 (complaints of bad backaches), 410 (back pain causing her to sit down and rest intermittently when doing household tasks), 532 (complaining of back pain to an examining psychologist), 563-64 (complaining of back pain to an examining physician and documenting mild tenderness in her lumbar spine and difficulty walking on heels and toes), 566 (limited lumbar range of motion); 745 (instructed to take Tylenol for her back pain)). This evidence, and the MRI results showing a degenerative spinal impairment, could reasonably relate to the period on or before the date of the ALJ's decision, as "[s]pinal . . . conditions of the type in question here take time to develop[.]" *Simon v. Berryhill*, No. 1:16-cv-04088(FB), 2017 WL 4736732, at *2 (E.D.N.Y. Oct. 16, 2017) (finding that an MRI dated three months after the ALJ's decision showing

9

continued degeneration of the claimant's spine related to the relevant time period); *see also Stone v. Berryhill*, 3:16-cv-581-GMB, 2018 WL 1384108, at *4-5 (M.D. Ala. Mar. 19, 2018) (concluding that an MRI dated two months after the ALJ's decision was conducted to investigate the source of the neck pain that the claimant had been experiencing since before the ALJ's decision, and as such, the MRI related back to the period before the ALJ's decision); *Webster*, 215 F. Supp. 3d at 242 (remanding case to assess whether a second MRI dated eight months after the ALJ's decision related to the relevant period, commenting that it was highly likely that the claimant's back condition was more serious than previously thought during the relevant time period "and did not worsen suddenly in the eight months between the ALJ's decision and the second lumbar spine MRI").

The Commissioner argues that even if the evidence is related to the relevant time period, mere diagnosis of a medically determinable impairment does not establish that the impairment affected the claimant's ability to perform basic work activities. *See, e.g.*, *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("The issue in the case is not the existence of these various conditions of [the claimant's] but their severity and, concretely, whether . . . they have caused her such severe pain that she cannot work full time."). While that is true, here the ALJ discounted Anderson's allegations of back pain due to, in part, a lack of objective medical evidence to support her complaints. (AR 88 ("[M]any of the claimant's allegations are unsupported by the objective medical evidence; as such, the credibility of the claimant's allegations, overall, is undermined."), 93 ("[A]llegations of limiting back pain . . . since the alleged onset date are simply not supported by the medical evidence.")).

Specifically, the ALJ found Anderson's back pain non-severe because she did not report

back pain to her provider until December 2015 and because "[n]o imaging has been performed to establish back . . . pathology." (AR 87 (citing AR 745)). The objective findings documented by the MRI of Anderson's lumbar spine fill that evidentiary gap, and as such, may have changed the ALJ's credibility assessment of Anderson's symptom testimony and the assigned physical RFC. *See, e.g.*, *Stepp v. Colvin*, 795 F.3d 711, 725-26 (7th Cir. 2015) (finding that treatment notes and an MRI created after the hearing and submitted to the Appeals Council indicated a gradual worsening of the claimant's degenerative disc disease, in contrast to the ALJ's conclusion that the claimant was on an upward trajectory at the end of the adjudicative period); *Farrell*, 692 F.3d at 771 (concluding that a doctor's diagnosis of fibromyalgia submitted to the Appeals Council was material where the ALJ's decision rested, in part, on that no fibromyalgia diagnosis had been confirmed, explaining that such new evidence "fills in that evidentiary gap by providing exactly that confirmation"); *Stone*, 2018 WL 1384108, at *6 (finding that an MRI dated two months after the ALJ's decision was material because there was a reasonable possibility that the ALJ's decision might have changed had he considered the MRI findings before issuing his decision and because it impacted the ALJ's credibility assessment); *Simon*, 2017 WL 4736732, at *2-3 (concluding that there was a reasonable possibility that the MRI dated three months after the ALJ's decision showing degeneration of the claimant's spine could directly affect the claimant's ability to perform sedentary work, and thus, the ALJ's conclusion); *Ballance v. Berryhill*, No. 16-3070, 2017 WL 3881221, at *2 (W.D. Ark. Sept. 5, 2017) (finding that had the ALJ reviewed the MRI, which was dated one month after the ALJ's decision, the ALJ's outcome may very well have been different); *Webster*, 215 F. Supp. 3d at 242 (stating that an MRI dated eight months after the ALJ's decision was material because "the new MRI could undermine the

ALJ's RFC determination and credibility assessment"); *McIntire v. Astrue*, 809 F. Supp. 2d 13, 22-23 (D. Conn. 2010) (concluding that there was a reasonable probability that a new doctor's opinion and an MRI report could have influenced the ALJ to decide the claimant's case differently had the evidence been before the ALJ at the time).

The Commissioner also argues that even if the MRI and the Ortho Northeast records relate to the relevant time period, they are not material because the ALJ assigned great weight to the opinion of B.T. Onamusi, M.D., a physician who examined Anderson in February 2015 (AR 563-66), and the opinions of Joshua Eskonen, D.O., and J.V. Corcoran, M.D., state agency doctors who reviewed Anderson's record in April and July 2015, respectively (AR 191-93, 204-06; 220-23), all who concluded that Anderson could perform light work. But had the ALJ considered the MRI and the Ortho Northeast records, the ALJ may have decided to assign less weight to these opinions. Dr. Onamusi based his opinion, at least in part, on the "minimal objective findings" of Anderson's complaints and that she had not really undergone any treatment for her back pain. (AR 83 (citing AR 563)). Likewise, the ALJ may have assigned less weight to the state agency doctors' opinions because they reviewed the record and issued their opinions prior to the date of this new objective medical evidence. The weight applied by the ALJ to these opinions could have ultimately impacted the assigned RFC, which is a determination reserved to the Commissioner. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (observing that in assigning an RFC, "an ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" (citation omitted)); 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-5p, 1996 WL 374183, at *4 (July 2, 1996).

Moreover, if the ALJ, after assessing Anderson's symptom testimony in light of the MRI and the Ortho Northeast records, ultimately decided to assign Anderson a more conservative RFC, this change could affect the outcome of the ALJ's decision. This is because given Anderson's age of 50, she would be deemed disabled under the grid rules if she were limited to sedentary work. 20 C.F.R. § 404, Subpt. P, App'x 2, § 200.00(g); *see Barnett v. Colvin*, No. 15-cv-1018-CJP, 2016 WL 4585733, at *7 (S.D. Ill. Sept. 2, 2016).

In sum, the Appeals Council erred when it summarily concluded that the MRI and the Ortho Northeast records were not material or related to the relevant time period simply because they were dated after the ALJ's decision. These records could reasonably relate to Anderson's complaints of back pain and provide medical evidence of a degenerative spinal impairment during the relevant period, potentially filling the "evidentiary gap" upon which the ALJ discounted Anderson's symptom testimony and based the physical RFC. *See Farrell*, 692 F.3d at 771; *Simon*, 2017 WL 4736732, at *2. Consequently, the case will be remanded to the Commissioner so that the ALJ may consider the additional evidence submitted to the Appeals Council and its impact on the ALJ's assessment of Anderson's symptom testimony and the assigned physical RFC.[3]

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion

---

[3] Because the case is being remanded based on the Appeal Council's failure to properly consider the additional evidence submitted to it after the ALJ's decision, the Court need not reach Anderson's remaining arguments. Having said that, as discussed above, the ALJ's consideration of the MRI and the Ortho Northeast records could impact the ALJ's assessment of Anderson's symptom testimony and the assigned physical RFC. Accordingly, the credibility of Anderson's symptom testimony and the physical RFC should be revisited upon remand.

and Order. The Clerk is directed to enter a judgment in favor of Anderson and against the Commissioner.

SO ORDERED.

Entered this 18th day of July 2018.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge